1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8

SCHADLER KRAMER GROUP, LLC,
a Nevada limited liability company,

Plaintiff,

v.

FIXTURES LIVING, INC., et al.,

Defendants.

2:11-CV-774 JCM (CWH)

9
10
11
12
13
14
15
16

**ORDER**

17    Presently before the court is defendant Fixture Living, Inc.'s motion to dismiss for lack of
18 personal jurisdiction or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).  (Doc.
19 #13).  Plaintiff Schadler Kramer Group, LLC has responded (doc. #14), and defendant has replied
20 (doc. #15).

21    Defendant's principal contention is that there is neither general nor specific jurisdiction such
22 that maintenance of this civil suit in the District of Nevada violates its due process rights.  Similarly,
23 defendant argues that because, among other reasons, there is no personal jurisdiction, venue in
24 Nevada is improper under 28 U.S.C. § 1391(a)(2).  Plaintiff apparently concedes that there is no
25 general jurisdiction.

26    However, plaintiff argues that because this dispute arises from defendant's contacts with
27 Nevada, specific jurisdiction obtains.  Defendant also argues that maintenance of the suit in Nevada

28

**James C. Mahan**
**U.S. District Judge**

1   is too costly, burdensome, and inefficient, and thus the court should transfer this case to the Southern

2   District of California.  Unsurprisingly, plaintiff argues that it is more efficient and less burdensome

3   to try the case in Nevada.

4   **I.      Personal Jurisdiction**

5          When a motion to dismiss for lack of personal jurisdiction is before a court, the plaintiff

6   bears the burden of establishing that jurisdiction is proper; however, "[i]f the court decides the

7   motion without an evidentiary hearing, . . . then 'the plaintiff need only make a prima facie showing

8   of the jurisdictional facts.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (quoting *Sher*

9   *v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  In determining whether personal jurisdiction

10  exists, the district court resolves all disputed facts in favor of the plaintiff.  *Pebble Beach Co. v.*

11  *Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Schwarzenegger v. Fred Martin Motor Co.*,

12  374 F.3d 797, 800 (9th Cir. 2004) ("Conflicts between the parties over statements contained in

13  affidavits must be resolved in the plaintiff's favor.").

14         Specific jurisdiction arises only if the claims "arise out of" or "relate to" the non-resident

15  defendant's contacts with the forum state. *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375

16  (Fed. Cir. 2000).  The Ninth Circuit analyzes three factors to determine if personal jurisdiction exists,

17  namely:

18         (1) the defendant has performed some act or consummated some transaction within the forum
           or otherwise purposefully availed himself of the privileges of conducting activities in the
19         forum, (2) the claim arises out of or results from the defendant's forum-related activities, and
           (3) the exercise of jurisdiction is reasonable.
20

21  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  In the instant

22  case, these facts favor a finding of personal jurisdiction over the non-resident defendant.

23         *a.      Purposeful Availment*

24         The first prong of the specific jurisdiction analysis is aimed at ensuring that the non-resident

25  defendant is not haled into court based upon random, fortuitous, or attenuated contacts with the

26  forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Here, the court does

27  not find that the defendant's contacts with Nevada were random, fortuitous, or attenuated.  Rather,

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1   the defendant purposefully traveled to Nevada to receive a business proposal from plaintiff.

2   After the initial meeting, defendant entered into a service agreement with plaintiff whereby

3   plaintiff promised to provide advertising and marketing services for defendant's business. By

4   traveling to Nevada for the express purpose of engaging in a business transaction with a Nevada

5   resident, "the defendant has performed some act or consummated some transaction within the

6   forum," thereby satisfying the first prong of the specific jurisdiction analysis. *See Bancroft &*

7   *Masters, Inc.*, 223 F.3d at 1086.

8   Such a contact was sufficient in *Burger King* to support a finding of personal jurisdiction.

9   There, the Court explained that the defendant "'[reach[ed] out beyond' his [home state] and

10  negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold

11  benefits that would derive from affiliation with a nationwide organization." *See id.* at 479-480.

12  Similarly, here, the defendant reached out beyond California and entered into an open-ended contract

13  with a Nevada corporation providing nationwide advertising and marketing services.

14  The *Burger King* Court also found that the defendant's actions "caused foreseeable injuries

15  to the corporation in Florida" because the defendant voluntarily entered into a contract in Florida and

16  then refused to make the contractually required payments in Florida, while continuing to use Burger

17  King's intellectual property. *Id.* at 480. By the same token, the defendant here entered into a

18  contract with a Nevada corporation in Nevada and did not make the required payments in Nevada

19  after extracting contractual benefits. Accordingly, just as in *Burger King*, it is "presumptively

20  reasonable for [defendant] to be called to account [in Nevada] for such injuries." *Id.*

21  Moreover, as explained by the Supreme Court, choice of law provisions should not be

22  ignored "in considering whether a defendant has 'purposefully invoked the benefits and protections

23  of a State's laws" for jurisdictional purposes." *Id.* at 482. In *Burger King*, the contract between the

24  parties contained a choice of law provision establishing that the laws of Florida controlled any

25  disputes arising between the parties. *Id.* at 481.

26  The Court reasoned that though such a provision, standing alone, would not confer

27  jurisdiction in Florida, when taken together with the interdependent relationship the defendant was

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    entering into with a Florida corporation, it was reasonably foreseeable that he would have to defend

2    against litigation in that state.  In so holding, the Court adopted appellate court's dissenting

3    conclusion that the defendant "'purposefully availed himself of the benefits and protections of

4    Florida's laws' by entering into contracts expressly providing that those laws would govern franchise

5    disputes." *Id.* at 482.  In the instant case, the service contract between the parties established Nevada

6    law as governing.  The defendant therefore, traveled to Nevada to meet with a Nevada business

7    regarding marketing services, hired that Nevada corporation to provide said services on an open-

8    ended basis with no express expiration date, and agreed that the agreement was governed by Nevada

9    law.  Thus, the defendant "purposefully availed [it]self of the benefits and protections of [Nevada]'s

10   laws" and it was reasonably foreseeable that defendant would have to defend against litigation in

11   Nevada.

12          b.      *Nexus Between Claim and Contacts*

13          In determining whether a particular claim arises out of forum-related activities the courts of

14   the Ninth Circuit employ a "but-for" test.  *See Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995).  The

15   requisite test asks "but-for [a defendant's] contacts with the [forum state], would [the plaintiff's]

16   claims against [the defendant] have arisen?"  *Id.* at 1500.

17          Here, but-for defendant initiating contact with plaintiff, traveling to Nevada to explore

18   business opportunities with plaintiff, entering into a contract with plaintiff, and allegedly failing to

19   pay for the contracted services, there would not be any claims against it.  Accordingly, the "but-for"

20   test is met.  *See id.*; *see also Shute v. Carnival Cruise Lines*, 863 F.2d 1437, 1445 (9th Cir. 1988)

21   (rejecting a restrictive interpretation of the "arising out of" prong and applying a "but-for"

22   requirement that simply "preserves the requirement that there be some nexus between the cause of

23   action and the defendant's activities in the forum") *rev'd on other grounds* 499 U.S. 585 (1991).

24          c.      *Reasonableness*

25          Where a defendant purposefully avails itself of the forum state, the court presumes that

26   maintaining personal jurisdiction is reasonable.  *See Caruth v. Int'l Psych. Ass'n*, 59 F.3d 126, 128

27   (9th Cir. 1995).  This presumption can "be overcome by a compelling case that the presence of other

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

considerations would render jurisdiction unreasonable." *Id.*  To determine reasonableness, the court balances the following seven factors:

> (1) the extent of the defendant's purposeful interjection in the forum;
>
> (2) the burden on the defendant in defending in the forum;
>
> (3) any conflict of sovereignty with the defendant's state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum state to the plaintiff's interest in convenient and
> effective relief; and
>
> (7) the existence of an alternative forum.

*See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  Taking these factors into account, the court finds that the maintenance of personal jurisdiction in Nevada is reasonable.

### (1) Purposeful Interjection

The Ninth Circuit has held that the purposeful interjection factor of the reasonableness analysis is analogous to the purposeful availment element of specific jurisdiction. *Sinatra v. Nat. Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).  Accordingly, whereas the plaintiff has alleged sufficient jurisdictional facts to show that defendant purposefully availed itself of the benefits of doing business in Nevada, this factor weighs in favor of finding jurisdiction.

### (2) Burden on the Defendant

"We examine the burden on the defendant in light of the corresponding burden on the plaintiff." *Sinatra*, 854 F.2d at 1199 (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986)).  Defendant contends that the number of its employees whose testimony will be relevant to this matter far exceeds the number of plaintiff's employees that will testify.  Def.'s Mot. Dismiss, Sears Decl. ¶¶ 18-19.  Additionally, defendant maintains that two of the most critical witnesses, former employees of plaintiff, now reside in California.  *Id.* at ¶ 19.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    Plaintiff, however, has supplied the court with affidavits that at least 27 of its current

2    employees performed services for defendant under the contract at issue.  Pl.'s Mot. Dismiss, Kramer

3    Aff. ¶ 20.  Each of these 27 employees is a possible witness to the litigation.  The court, therefore,

4    finds that the burden on plaintiff would be greater if it were required to travel to California to

5    maintain its suit against defendant. *See Pebble Beach Co.*, 453 F.3d at 1154 (explaining that district

6    court resolves all disputed facts in favor of the plaintiff).

7    Additionally, both parties have shown an ability and willingness to travel to each other's

8    respective forums to conduct and engage in business.  As such, the burdens of interstate travel

9    between Southern California and Nevada cannot be so great on defendant so as to result in a

10   wholesale deprivation of due process. *See Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d

11   1474, 1481 (9th Cir. 1986).

12   Accordingly, to the extent this factor bears any weight in the court's analysis, it favors a

13   finding of jurisdiction.

14          (3) Conflicts of Sovereignty

15   No conflicts of sovereignty apply in this case.

16          (4) Forum State's Interest

17   The contract contains a choice of law provision.  Each state has an interest in deciding the

18   application of its own laws and providing a forum for its residents to redress injuries caused by out

19   of state defendants. *See Kumarelas v. Kumarelas*, 16 F. Supp. 2d 1249, 1255 (D. Nev. 1998); *see

20   also Mirage Casino-Hotel v. Caram*, 762 F. Supp. 286, 289 (D. Nev. 1991) ("Nevada has a vested

21   interest in having courts located within its boundaries deciding on the application of its laws.").

22          (5) Efficient Resolution

23   The site where the disputed events took place, or where most of the evidence is located, will

24   normally be the most efficient forum. *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325,

25   1331 (9th Cir. 1985).  This factor, however, is "no longer weighed heavily given the modern

26   advances in communication and transportation." *See Panavision Intern., L.P. v. Toeppen*, 141 F.3d

27   1316, 1323 (9th Cir. 1998) (citing *Caruth*, 59 F.3d at 129)).  Moreover, as explained above, plaintiff

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

has at least 27 possible witnesses to this litigation that reside in Nevada.  To the contrary, defendant has only identified eight possible witnesses residing in California.  *Compare* Kramer Aff. ¶ 20 *with* Sears Decl. ¶ 18.

### (6) Plaintiff's Interest in Convenient and Effective Relief

Plaintiff has an interest in having a Nevada court interpret the contractual rights at issue in the instant litigation.  Also, defendant does not dispute plaintiff's convenience in having the dispute resolved in Nevada, rather it simply states that effective relief is also available in San Diego.  *See* Def.'s Opp at 11.

### (7) Alternative Forum

The contract provides that Nevada law will govern the contract and as explained above, the courts in this state have a vested interest in interpreting Nevada law.  See Mirage, 762 F. Supp. at 289.

Weighing each of these factors, the court finds that the exercise of personal jurisdiction over defendant is not unreasonable.  Accordingly the defendant may be subjected to personal jurisdiction in the District of Nevada.

## II.   Improper Venue

This is a diversity action, and thus venue is governed by 28 U.S.C. § 1391(a).  In determining whether venue is proper under § 1391(a), disputed facts are viewed in the light most favorable to the non-moving party and district courts draw all reasonable inferences and resolve factual disputes in favor of the non-moving party.  *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

With these principles in mind, the court finds that venue is proper because defendant is subject to personal jurisdiction in Nevada and a substantial part of the events and omissions giving rise to the claim occurred in Nevada.  *See* 28 U.S.C. § 1391(a)(2) (stating venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .").  For example, defendant traveled to Nevada to begin negotiations with plaintiff and allegedly executed the contract in Nevada.  Compl. ¶ 4.

1    Defendant's arguments are unavailing.  It claims that plaintiff provides services to defendant

2    in California and that any payments to plaintiff originated from California.  However, the advertising

3    services provided to California, were provided from Nevada, where plaintiff was located and its

4    operations based.  A substantial portion of the actual work was conducted in Nevada, though it was

5    transported to California.

6    Additionally, though defendant remitted payment (and allegedly failed to remit payment)

7    from California, these monies were meant to arrive in Nevada.  Thus just as the payments were acts

8    and/or omissions occurring in California, they were equally occurring in Nevada.

9    **III.    Transfer of Venue**

10    Pursuant to 28 U.S.C. § 1404(a) district courts have discretion to decide motions for transfer

11    of venue based on individualized, case-by-case considerations of convenience and fairness.  *See*

12    *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  When adjudicating motions for

13    transfer of venue, the plaintiff's choice of forum is entitled to considerable weight, *Lou v. Belzberg*,

14    834 F.2d 730, 739 (9th Cir. 1987), and a defendant must make a "strong showing of inconvenience

15    to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison*

16    *Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  The factors a court considers when determining a motion

17    for transfer of venue include:

18    (1) the location where the relevant agreements were negotiated and executed;

19    (2) the state that is most familiar with the governing law;

20    (3) the plaintiff's choice of forum;

21    (4) the respective parties' contacts with the forum;

22    (5) the contacts relating to the plaintiff's cause of action in the chosen forum;

23    (6) the differences in the costs of litigation in the two forums;

24    (7) the availability of compulsory process to compel attendance of unwilling non-

25    party witnesses; and

26    (8) the ease of access to sources of proof.

27

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

1   *Jones*, 211 F.3d at 498-99.  Again, after considering each of these factors and weighing them, the
2   court finds that defendant has not made a sufficient showing of inconvenience to upset the plaintiff's
3   choice of forum.

4   (1) Location where Agreements were Negotiated and Executed

5   The defendant admits that its agents traveled to Nevada to begin preliminary negotiations
6   with plaintiff in the hopes of retaining plaintiff's services, and were ultimately successful in securing
7   plaintiff's services.  However, there is a dispute regarding where the contract was executed, with the
8   complaint alleging that it was executed in Nevada but defendant's declarations stating it was
9   executed in California.  Regardless, of the dispute, this court finds that because the defendant
10  initially reached out to plaintiff in Nevada and then traveled to Nevada in order to engage in business
11  with plaintiff, this factor weighs towards maintaining the suit in Nevada.

12  (2) State Most Familiar with the Governing Law

13  As explained above, the contract contains a choice of law provision indicating that Nevada
14  law governs the contract.  Nevada courts are more familiar with Nevada law than California court.

15  (3) Plaintiff's Choice of Forum

16  The defendant chose Nevada as the forum to litigate the instant dispute and that choice is
17  entitled to considerable weight.  *See Lou*, 834 F.2d at 739.

18  (4) Respective Parties' Contacts with the Forum

19  Defendant does not have systemic or continuous contacts with the forum.  However, as will
20  be discussed below, the dispute directly relates to the defendant's contacts with this state.

21  (5) Contacts Relating to Cause of Action in the Forum

22  Plaintiff is located in Nevada.  The defendant sought out a business relationship with the
23  plaintiff and sent two of its employees to travel to Nevada to negotiate with, and retain the services
24  of, the plaintiff.  Though there is a dispute regarding where the contract was actually executed, the
25  instant dispute still arises from the parties' contacts with the forum state.   Accordingly, the
26  defendant's contacts with Nevada directly relate to plaintiff's cause of action in Nevada.

27

28

**James C. Mahan**
**U.S. District Judge**

1    (6) Differences in Cost of Litigation

2    As explained above, plaintiff has identified 27 potential witnesses that are currently residing

3    in Nevada.   The defendant, however, has only identified eight potential witnesses residing in

4    California.  Though the defendant has identified other evidence that is located in California, such

5    as non-party witnesses, the intellectual property at issue, and the accounting records relating to

6    invoicing and payment, there is not so much evidence located in California to greatly affect the costs

7    of litigating in Nevada as opposed to San Diego.

8    The only evidence that is more difficult to present in Nevada, as opposed to San Diego, is

9    the testimony of the non-party witnesses, including Bill Kauker and the third party vendors and

10   media outlets operating in the Southern California market, due to transportation costs.  However, the

11   defendant provides no evidence regarding who these vendors are, how many of them are potential

12   witnesses, or how many of the potential witnesses are located in or around San Diego.  Accordingly,

13   the court cannot find that the differences in the cost of litigation are substantially less in San Diego

14   than they would be in Nevada.

15   (7) Compulsory Process

16   Defendant submits no argument or evidence that it is any less able to compel a witness to

17   attend proceedings in Nevada than in Las Vegas.

18   (8) Sources of Proof

19   Both sides argue that the majority of proof lies in their respective states.  For example,

20   plaintiff points to the fact that it has 27 employees in Nevada who have information material to the

21   litigation, and that because this was a services contract, "the bulk of the relevant evidence in this case

22   comes from the party who performed the services." Pl.'s Opp. at 13.  The defendant counters that

23   at least eight party witnesses and an unidentified number of non-party witnesses reside in California,

24   as do all of defendant's records concerning the contract. Def.'s Mot Dismiss at 10, 11, 13.

25   Discovery will necessarily be had in both California and Nevada.  However, advances in

26   modern communication and transportation enable litigants to present evidence and other sources of

27   proof in far reaching venues. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir.

28

**James C. Mahan**
**U.S. District Judge**

- 10 -

1998).  Here, the relative proximity between San Diego and Las Vegas is not such that transferring proof from San Diego to Las Vegas is unduly burdensome.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a) (doc. #13) be, and the same hereby is, **DENIED.**

DATED September 13, 2011.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**